## STATE OF MISSOURI, Respondent, v. ABE WILSON, Appellant.

### Springfield Court of Appeals, December 5, 1910.

1. **CRIMINAL LAW: Practice: Continuance: Discretion of Trial Court.** In passing upon the application of the defendant in a criminal case for a continuance there is accorded to the trial judge a large discretion, and unless it clearly appears that such discretion has been abused to the prejudice of the rights of the defendant, an appellate court will not interfere. The overruling of the application for continuance in this case is upheld.

2. **CONTINUANCE: Absence of Witnesses: Diligence: Discretion of Trial Court: Criminal Law.** Defendant in a criminal case filed an application for a continuance, alleging the absence of two witnesses. It appeared that one witness had been sick for some time and there was no showing why his deposition was not taken. The other witness had been subpoenaed and there was no showing why his attendance was not secured by an attachment. It also devolved at the trial that the testimony of these witnesses as set out in the motion for continuance would have been of no material benefit to the defendant. *Held,* that the trial court did not abuse its discretion in denying a continuance.

3. **WITNESSES: Criminal Law: Impeaching Defendant as Witness: Showing Reputation for Similar Offenses.** When a defendant offers himself as a witness in his own case his credibility may be assailed by proof of the fact that he bears the reputation in the community of being guilty of offenses against the law analogous to the one for which he is being tried. Hence, in a prosecution for violating the Local Option Law, when defendant became a witness, it was held competent to show that he had the reputation in the community of running a "blind tiger."

4. **CRIMINAL LAW: Practice: Asking Questions: Suggestion by Trial Court.** It is not improper for a trial court in a criminal case to suggest to the prosecuting attorney a proper way to ask a question.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*T. R. Moore* for appellant.

(1)   The trial court erred in overruling defendant's application for a continuance. R. S. 1899, sec. 2600; State v. Banks, 118 Mo. 117; State v. Woodward, 182 Mo. 391; State v. Crane, 202 Mo. 54; State v. Sassaman, 214 Mo. 735; State v. Devorss, 221 Mo. 474; State v. Day, 100 Mo. 452.   (2)   In allowing evidence as to defendant's general reputation for being a moral and law-abiding citizen when his reputation was not in question and by allowing witnesses to testify to specific acts of immorality and to acts that are criminal, to-wit: That defendant was a blind tiger man, the court committed error.   State v. White, 35 Mo. 500; State v. Wilson, 117 Mo. 570; State v. Vandiver, 149 Mo. 502; Greenleaf on Evidence (14 Ed.), sec. 214.

*Fred W. Barrett* for respondent.

(1)   It is contended that the court erred in overruling defendant's application for a continuance. Before this can be error it must appear that defendant has used diligence to procure the testimony of the absent witnesses, either by having the witnesses subpoenaed or by securing their depositions. (Although Ed. Wilson was known by him to be sick at Billings, yet he made no effort to secure his testimony.)   State v. Woodward, 182 Mo. 391.   (2)   The discretion of passing upon an application for a continuance is largely accorded to the trial judge and unless it clearly appears that such discretion has been abused to the prejudice of the defendant's rights, the appellate court will not interfere.   State v. Banks, 118 Mo. 117; State v. Dettmer, 124 Mo. 432; State v. Horn, 209 Mo. 452.

(3)   When a defendant offers himself as a witness his credibility as a witness may be assailed by proof of the fact that he bears the reputation in the community where he lives of being guilty of offenses against the law analogous to that for which he is being tried. State v. Oliphant, 128 Mo. App. 252.

NIXON, P. J.—On information of the prosecuting attorney, filed March 11, 1909, defendant, a druggist, was tried and convicted in the circuit court of Christian county on a charge of violating the Local Option Law, and was fined three hundred dollars. He has appealed to this court.

At the trial, defendant admitted that the Local Option Law had been adopted and was in force in Christian county. The testimony of William E. Ferrell, the prosecuting witness, was that about the 4th day of July, 1908, he bought of defendant at defendant's drug store in Billings, Christian county, Missouri, without a prescription, a half-pint of whiskey. On cross-examination, he weakened as to the date, but said the sale took place in the year 1908. Two boys from Greene county were with him at the time, but neither were witnesses in the case. Ferrell testified that before and after this particular time, defendant had refused to sell him whiskey. The defendant called several witnesses whose testimony tended to show that Ferrell had told them that defendant never sold him any whiskey. Defendant took the stand in his own behalf and testified that he never sold whiskey to Ferrell, and that Ferrell told him two hours before the trial that he (Ferrell) had not made the purchase as charged. His version of the transaction was that Ferrell came into his place "tolerably full" and wanted some whiskey and upon being refused "got pretty raw about it" and was told to get out; that Ferrell said, as well as defendant could understand—he couldn't hear it right.

good—"I will fix him." Defendant admitted having been fined once before for selling whiskey. His witness, A. R. Grammar, said he bought a great deal of whiskey of defendant, but before closing his testimony stated that his purchases were upon prescriptions. In rebuttal, the state offered evidence to show that defendant bore the reputation in the community of a violator of the Local Option Law.

Defendant was arraigned, but before entering his plea, filed a motion for a continuance stating that he could not safely proceed to trial at that term of court because of the absence of T. R. Jones and Ed. Wilson, competent witnesses for the defendant in the case, both residing in Christian county; that he believed he could obtain the presence of said witnesses to be used in the trial of the case at the next term of court and believed he could prove by them the following facts: "That they were present at the time of the alleged sale should have taken place and that they heard the prosecuting witness herein ask the defendant for whiskey and defendant refuse him of same and heard prosecuting witness tell defendant that damn him he would fix him for not selling said witness whiskey, and defendant can further prove by said witnesses that he never sold prosecuting witness any whiskey at any time or date as alleged in the information." Further, that he believed said facts to be true and could not prove them by any other witness whose testimony could be as readily procured. That a subpoena was issued for said witnesses on March 30, 1909, which had been returned with the indorsement thereon that it had been duly served. "That Ed. Wilson is now seriously sick at his home in Billings and will not be able to attend this trial during this court," etc.

The overruling of this motion is relied on as reversible error. The authorities uniformly hold that in passing upon an application for a continuance, there is accorded to the trial judge a large discretion, and

that unless it clearly appears that such discretion has been abused to the prejudice of the rights of the defendant, an appellate court will not interfere. [State v. Banks, 118 Mo. l. c. 123, 23 S. W. 1079; State v. Dettmer, 124 Mo. l. c. 432, 27 S. W. 1117.] In the latter case, the court said: "An application must not only be formally sufficient, but one of its essential elements, its prominent feature, must be an evident good faith. It must not be a mere dodge-trial paper. Whether good faith prompts the application, the trial court is obviously the better fitted, more accurately, to judge. For this reason it is that it has become the uniform rule of this court to defer to the trial court in such matters, and not to reverse its action, unless the party assailing that action makes it plainly to appear that the judicial discretion in that regard has been unsoundly or oppressively exercised." Again, in the case of State v. Devorss, 221 Mo. l. c. 474, 120 S. W. 75: "It does not appear upon what ground or grounds the motion (for continuance) was overruled, and the presumption must, therefore, be indulged that the ruling was correct, and for good and sufficient reasons, and the burden is upon the defendant to prove the contrary."

The information in this case was filed on March 11, 1909. On March 30, 1909, defendant caused subpoenas to be issued for the two witnesses in question, which were duly served. On April 8, 1909, the case was continued for the term, the reason not appearing. On August 23, 1909, the application for continuance was denied and trial had. It is thus seen that defendant received the benefit of one continuance. There was no showing that defendant undertook to obtain the deposition of Ed. Wilson, his own son, who was sick at Billings. This could have been done under section 2904, Revised Statutes 1899. If the witness had been sick a considerable time, this certainly would have been true

and defendant did not show how long the witness had been sick or how seriously. As witness Jones was bound by the subpoena served upon him to appear at the August term, 1909, defendant, under section 4664, Revised Statutes 1899, could have had an attachment issued for him. No showing was made that defendant exercised diligence in this regard. Aside from this, the prosecuting witness said he had been refused whiskey by defendant on occasions before and after the transaction in question and he could not specify the day of the year 1908 when he made the purchase which is the basis of the charge. With no definite means of knowing on what day or in what month the sale occurred, the testimony of the missing witnesses would have been futile, remembering that there were times, according to the prosecuting witness, when he was refused whiskey by the defendant. The ability to prove such facts under these circumstances bore on the face of the attempt a palpable absurdity. Of course, this developed on the trial, but we quote the language of the Supreme Court in State v. Worrell, 25 Mo. l. c. 256, which is pertinent in this connection: ''Even if the circuit court may have seemingly exercised its discretion without proper caution at first (which we do not pretend to say was the case here), yet when the whole case is presented before this court, and the absent witness, from what is alleged in the affidavit, may be supposed not to be able to change the result, if produced and present, and indeed ought not to change the result, there can be no injury done to the defendant by ruling him to trial, and in such cases this court will not reverse.'' However, under the showing made, we are not satisfied that the trial court so abused its discretion to defendant's prejudice as to warrant a reversal.

II. We are also unable to uphold defendant's second contention that error was committed by the trial

judge in the admission of evidence offered by the state in rebuttal for the purpose of impeaching defendant.

Witness Hocroft, a justice of the peace, and who had been constable, sheriff, and mayor of the town of Billings, stated that he had known the defendant for twenty-five years in Billings. "Q. Are you acquainted with his general reputation in the community where he lives for being a whiskey seller in violation of the Local Option Law? Mr. McCaffarty: We object to that; his reputation is not in question. The Court: The courts have held different. Mr. McCaffarty: The defendant excepts to the ruling of the court. The Court: You had better put it this way, whether he is acquainted with his general reputation for being a moral and law-abiding citizen. Q. Are you acquainted with his general reputation? A. Yes, sir. Mr. McCaffarty: We except to the remarks of the court in directing the prosecuting attorney as how to ask questions. Q. Is that reputation good or bad, for being a law-abiding citizen, for morality and being a law-abiding citizen? A. Well, if I should have to answer it, I suppose it is bad." Cross-examination: "Q. You said his reputation is bad? A. Yes, sir, in regard to certain things. Q. What is his reputation? A. He runs a blind-tiger and sells whiskey to most everybody that wants it. Q. That is his reputation? A. Yes, sir. Q. That is your personal knowledge of it? A. No, sir, it is everybody's else down there."

J. B. Burghouse, manager of the Sanders Mercantile Company, had known defendant in Billings for twenty-five years. "Q. Are you acquainted with his general reputation for being a law-abiding citizen? A. Yes, sir. Q. What is that reputation, good or bad? Mr. McCaffarty: We object and except to that. A. Well, as to his running a blind-tiger, that is his general reputation."

This question has been well decided in the case of State v. Oliphant, 128 Mo. App. 252, 107 S. W. 32,

where, after reviewing the decisions in this state, the court said: "Adherence to these principles compels us to hold that when a defendant offers himself as a witness, his credibility as a witness may be assailed by proof of the fact that he bears the reputation in the community of being guilty of offenses against the law analogous to that for which he is being tried. A man may possess a violent and turbulent disposition and yet not break the law, and it is obvious that such infirmity of temperament bears no relation to his character for truth and veracity. But, knowingly to violate the law is a thing no moral man would do. It is a vice, the practice of which under the doctrine under discussion, implies that the offender may not possess sufficient moral principle to testify to the truth, especially in a case where the truth may be against his interest."

This holding disposes of defendant's fourth contention, except his objection that the court committed error in directing the prosecuting attorney how to ask the question. The question, as originally put, under the holding in the above case, would have been proper, and the court merely suggested another way of bringing out the evidence, which was also proper. So, as to the third assignment in which complaint is made that in one of the instructions the court used the defendant's name (Abe Wilson) at the beginning and later on in the instruction referred to him as "the defendant." In the other instructions he was referred to as "the defendant," so as to amply inform the jury who was meant by "Abe Wilson." This objection is so frivolous as not to merit consideration.

It is clear that the judgment should be affirmed and it is so ordered.